## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK KWANING** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 15-928** |
| | : | |
| **COMMUNITY EDUCATION** | : | |
| **CENTERS, INC.** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                         **APRIL 8, 2015**

In a verbose recitation of claims admittedly derived from a lawyer-prepared "checklist" of grievances completed by African and African-American prison corrections officers, Plaintiff's counsel's present complaint seeks a remedy for Officer Frank Kwaning based on alleged racially discriminatory and retaliatory employment practices towards him and many unnamed African and African-American corrections officers arising in a hostile work environment. If proven true, many of these serious allegations paint a picture of a prison where race discrimination is not only tolerated but encouraged. Reviewing the prolix Complaint, we find kernels of specific facts giving rise to plausible claims for race discrimination and hostile work environment suffered by Officer Kwaning. We also streamline and strike many allegations not related to a cognizable claim. In the accompanying Order, we deny the defendant prison's motion to dismiss the race discrimination and hostile environment claims, grant the motion as to the retaliation claim with leave to amend mindful of Fed.R.Civ.P. 11 and strike approximately thirty (30) impertinent paragraphs.

## I.    PERTINENT FACTS ALLEGED IN THE COMPLAINT

Defendant Community Education Centers, Inc. ("CEC") employs Officer Kwaning as a corrections officer at the George W. Hill Correctional Facility (the "Prison") in Delaware County, Pennsylvania. (Compl., ¶¶ 1-2.) Officer Kwaning is a native of Ghana. (*Id.* ¶ 1.) Officer Kwaning has worked at the prison since 2009 and now serves on the Executive Board of the corrections officer union. (*Id.* ¶ 1, 4.)

Officer Kwaning claims to be subject to discriminatory employment practices because he is an African corrections officer. (*Id.* ¶ 11.) He alleges that CEC, through its agents at the prison, engage in wide spread racial discrimination against African and African-American corrections officers. The racial discrimination manifests itself through disparate application of the disciplinary policy on racial grounds and open animosity towards African and African-American officers which cultivates a hostile work environment. (*Id.* ¶¶ 9, 28, 29, 34, 35, 57, 62, 66, 67.)

Officer Kwaning specifically alleges that the white management officials assign "rover duty" disproportionately. (*Id.* ¶ 13.) Officers assigned rover duties are required to stand for a majority of their assignment as opposed to unit assignment where officers are able to sit. (*Id.* ¶ 15.) Rover duty is designed to be randomly assigned. (*Id.* ¶ 13.) However, Officer Kwaning alleges that African and African-American officers draw rover duty with greater frequency than white officers despite there being many more white officers than African or African-American officers. (*Id.*) Officer Kwaning states that he has been assigned rover duty at least thirty (30) times in the last two months before filing this Complaint. (*Id.*) He alleges that management assigns rover duty on racial grounds. (*Id.*)

Further, Officer Kwaning alleges that CEC removed him and other African and African-American officers from certain duties at their unit posts. (*Id.* ¶ 14.) He alleges that this occurred because management is inherently distrustful of African and African-American officers. (*Id.*) Officer Kwaning alleges that CEC removes duties at unit posts and assigns rover duty to retaliate against him for filing charges of "illegal discrimination." (*Id.* ¶ 12.)

Officer Kwaning claims that CEC wrote him up for being late to roll call when he was one minute early. (*Id.* ¶ 17.) He alleges that the senior management wrongly disciplined him and other African and African-American officers because placing these allegations in their personnel file hinders promotions and makes CEC's termination decisions easier. (*Id.*) Officer Kwaning alleges that this arbitrary application of the disciplinary policy favors white corrections officers because they are not disciplined as strictly as African and African-American officers. (*Id.* ¶¶ 22-24, 30.) Further, this conduct cultivates a culture of apprehension among the African and African-American officers as they fear being terminated for minor offenses. (*Id.* ¶¶ 38, 58.)

## II.    STANDARD OF REVIEW

Officer Kwaning alleges discrimination based on his race and national origin in violation of the Pennsylvania Human Relations Act (PHRA) (Count I), retaliation in violation of the PHRA (Count II), and hostile work environment in violation of the PHRA (Count III).[1]  CEC moved to dismiss all the allegations in the Complaint.

A Rule 12(b)(6) motion to dismiss examines the complaint's sufficiency. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), we "consider only the

---

[1]    On March 20, 2015, Officer Kwaning withdrew his claims of unjust enrichment and negligence *per se*. Officer Kwaning withdrew those claims after CEC filed its motion to dismiss (ECF Doc. No. 6, Def.'s Mot.) Thus, CEC's motion to dismiss Count IV for unjust enrichment and Count V for negligence *per se* is denied as moot.  This Court has subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1332.

complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir.2010) (alteration in the original) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)) A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), which gives the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Any "pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The complaint need not contain "detailed factual allegations" but must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.' " *Warren Gen. Hosp.,* 643 F.3d at 84 (quoting *Fowler,* 578 F.3d at 210). We dismiss a complaint if the factual allegations are not sufficient " 'to raise a right to relief above the speculative level.' " *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank,* 712 F.3d 165, 169 (3d Cir.2013) (quoting *Twombly,* 550 U.S. at 555).

4

## III.   ANALYSIS
### A.   Discrimination under the PHRA (Count I) [2]

A *prima facie* race discrimination claim requires proof that: (1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; and (3) the circumstances of the adverse employment action give rise to an inference of discrimination. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir.2013).

Officer Kwaning is a member of a protected class based on his race (African) and national origin (Ghana). (Compl. ¶ 1.) CEC argues that Kwaning's race discrimination claim under the PHRA should be dismissed because he fails to allege facts evidencing an adverse employment action.[3] CEC also argues that Kwaning fails to allege that similarly situated employees not in the protected class were treated more favorably. (ECF Doc. No. 6, Def.'s Mem., 12.)

In a race discrimination claim, an adverse employment action "encompasses all tangible employment actions 'such as hiring, firing, failing to promote, reassignment or a decision causing significant change in benefits." *Sherrod v. Philadelphia Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L. Ed. 2d 633 (1998)). Officer Kwaning alleges that he was assigned rover duty more often than similarly situated white officers. (Compl. ¶ 13.) Further, CEC allegedly removed Officer Kwaning, along with other African and African-American officers, from certain duties at a

---

[2]      Plaintiff does not bring any federal claims under Title VII. However, Title VII and the PHRA are interpreted together so we analyze PHRA claims under Title VII case law. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

[3]      CEC additionally argues that each of Kwaning's PHRA claims must be dismissed due to his failure to attach his PHRC right-to-sue letter. There is no such requirement and CEC's motion to dismiss is denied in that regard. *See Sample v. Keystone Mercy*, No. 12-3188, 2012 WL 5401015, at *2 (E.D. Pa. Nov. 2012) (finding plaintiff is not required to attach PHRA charge or right to sue letter to federal court complaint).

5

particular unit post. (*Id.* ¶ 14.) As a reassignment may constitute an adverse employment action for purposes of Title VII, we find that at this early stage in the proceedings, Officer Kwaning has satisfied the pleading of an adverse employment action. *See Burlington Indus.*, 524 U.S. at 761; *Zielinski v. Pennsylvania State Police*, 108 F. App'x 700, 705-06 (3d Cir. 2004) (finding transfer without loss in pay or rank an adverse employment action for Title VII purposes).

We further find that the circumstances surrounding these instances give rise to an inference of discrimination. CEC allegedly disproportionately assigns rover duty to African and African-American officers despite the supposed "random" selection and the fact that the majority of officers in the prison are white. (Compl. ¶¶ 10 and 13.) Further, CEC has allegedly removed African and African-American officers from preferred positions at unit posts where no white officers have been removed in a similar fashion. (*Id.* ¶¶ 14 and 15.) Construing Officer Kwaning's allegations as true, we find these circumstances may give rise to an inference of discrimination.

Officer Kwaning will need to make a more substantial evidentiary showing at the summary judgment stage to prevail, but for now he states a claim for race discrimination.

## B.    Retaliation under the PHRA (Count II)

A *prima facie* case of retaliation requires the plaintiff to show: "(1) that he engaged in protected activity, (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the protected activity." *Raffaele v. Potter*, No. 09-3622, 2012 WL 33035, at *7 (E.D. Pa. Jan. 6, 2012) (citations omitted). Once a plaintiff establishes a prima facie case of retaliation, the burden then shifts under the familiar *McDonnell Douglas* framework to the defendant to proffer a legitimate non-discriminatory reason for its conduct. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).

### *i.    Did Kwaning engage in protected activity?*

CEC argues that Kwaning did not engage in a protected activity.  (ECF Doc. No. 6,

Def.'s Mem., 10-11.)  "With respect to protected activity, the anti-retaliation provision of Title

VII protects those who participate in certain Title VII proceedings (the "participation clause")

and those who oppose discrimination made unlawful by Title VII (the "opposition clause")."

*Moore*, 461 F.3d at 341 (citation omitted).  The conduct complained of need not rise to the level

of actual discrimination but plaintiff must "hold an objectively reasonable belief, in good faith,

that the activity they oppose is unlawful under Title VII."  *Id.*  Protected activity may be in the

form of

> informal protests of discriminatory employment practices, including making
> complaints to management, writing critical letters to customers, protesting against
> discrimination by industry or society in general, and expressing support for co-
> workers who have filed formal charges.

*Curay–Cramer v. Ursuline Acad. of Wilmington*, 450 F.3d 130, 135 (3d Cir.2006) (internal

quotation marks removed).

Officer Kwaning's offers scant allegations of protected activity.  In one paragraph,

Officer Kwaning states that disciplinary action was taken against him for "filing charges of

illegal discrimination."  (Compl., ¶ 12.)  It is unclear with whom Officer Kwaning filed these

charges, the substance of charges other than "illegal discrimination", and when he filed these

charges.  In another paragraph, Officer Kwaning alleges he complained about not being relieved

in a timely manner from rover duty.  (*Id.*  ¶ 16.)  Lastly, Officer Kwaning alleges that in

retaliation for participating in a National Labor Relations Board ("NLRB") investigation, CEC

management directly placed prisoner grievances directly into Officer Kwaning's personnel file

outside of the proper procedure.  (*Id.* ¶ 72.)  Officer Kwaning asserts that CEC placed these

undated prisoner grievances in his file to retaliate against him for his participation in the NLRB investigation. (*Id.*)

Officer Kwaning's participation in an NLRB investigation is not protected activity under the PHRA. "Title VII's anti-retaliation provisions protect employees who oppose employment practices made illegal by Title VII." *Brangman v. AstraZeneca, LP*, 952 F. Supp. 2d 710, 721 (E.D. Pa. 2013) (citing *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del, Inc.*, 450 F.3d 130, 134-35 (3d Cir. 2006)). The NLRB has an interest in adjudicating claims of unfair labor practices not conduct prohibited under Title VII. Officer Kwaning's participation in any NLRB investigation dealt with unfair labor practices, rather than conduct made unlawful under Title VII or the PHRA. *Brangman*, 952 F. Supp. 2d at 721 (finding complaint concerning violation of federal anti-kickback law not protected activity for retaliation claim). This participation cannot constitute protected activity under the PHRA. Similarly, Officer Kwaning's complaint regarding not being relieved for a meal break on time cannot be protected activity under the PHRA. *Id.*

Officer Kwaning's allegation that he filed charges of "illegal discrimination" comes closest to describing protected activity under the PHRA. If Officer Kwaning had in fact complained of "illegal discrimination" by filing a complaint with his employer or by filing charges with a regulatory agency complaining of race discrimination, then that is sufficient to satisfy the protected activity requirement. However, Officer Kwaning provides no facts to support his claim. Instead, he relies on a conclusory allegation that he complained of "illegal discrimination." We do not know to whom he complained or when he complained. Such a conclusory allegation cannot support a claim for retaliation. *See Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 (3d. Cir. 2010) (affirming dismissal of retaliation claim based on conclusory allegations). Without more, "the District Court [is] left with insufficient 'factual

content that [would allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)).

Without showing a protected activity, Officer Kwaning fails to state a claim for retaliation. We will grant Officer Kwaning leave to amend his complaint to cure this deficiency if he can do so under the law and Fed.R.Civ.P. 11.

### C.   Hostile Work Environment under the PHRA (Count III)

#### i.   *Did Officer Kwaning fail to administratively exhaust his hostile work environment claim?*

CEC initially argues that Officer Kwaning failed to exhaust his administrative remedies with regard to his hostile work environment claim because it is not contained in his administrative charge. (ECF Doc. No. 6, Def.'s Mem., 8-9.)   We must determine "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984). Where an employee states that they have been discriminated against over the course of their employment, a hostile work environment claim can be said to arise out of the charge of discrimination. *See Weems v. Kehe Food Distribs., Inc.*, 804 F. Supp. 2d 339, 342 (E.D. Pa. 2011).   Officer Kwaning's administrative charge alleges that he was subject to illegal discrimination over a period of time and that it was a continuing occurrence, which taken together may result in the investigation of a hostile work environment. Thus, we find Officer Kwaning's hostile work environment claim "can reasonably be expected to grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976).

9

### ii. *Does Officer Kwaning state a claim for hostile work environment?*

A *prima facie* case of hostile work environment requires Plaintiff to show (1) that he suffered intentional discrimination because of his race; (2) that the discrimination was severe and pervasive; (3) that the discrimination detrimentally affected him; (4) that the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990).

CEC challenges the second element, arguing that Officer Kwaning fails to allege any facts demonstrating "severe and regular" discrimination on account of his race. (ECF Doc. No. 6, Def.'s Mem., 9-10.)

Officer Kwaning alleges intentional discrimination based on race and national origin when CEC assigned assigned him to the rover position, removed him from duties at his post, wrote him up for being late for roll call despite being early and not awarding him light duty where similarly situated white officers were. Officer Kwaning alleges that white officers consistently "make fun of" his African accent. At this early stage, we find that Officer Kwaning sufficiently alleges facts to support "pervasive and regular" discrimination. Officer Kwaning repeatedly alleges a pervasive animus towards African-American corrections officers, including a system of discipline that is enforced against African-American corrections officers in a different manner than white corrections officers, and instances of racially discriminatory images of African-Americans. *See Velez v. QVC, Inc.*, 227 F.Supp. 2d 384, 409-412 (E.D. Pa. 2002). This conduct, if proven, could be said to affect a reasonable person of the same race and national origin as Officer Kwaning. We further find the existence of respondeat superior due to the alleged involvement of senior management in many of the alleged instances of discrimination, as

well as the alleged filing of complaints that would put them on notice of discrimination. Construing the allegations as true, we find Officer Kwaning plausibly states a claim for hostile work environment.

### D.    Motion to Strike[4]

CEC first moves to strike myriad allegations as time barred or irrelevant and impertinent under Rule 12(f).[5]  (ECF Doc. No. 6, Def.'s Mem., 14-18.)  Because we believe that some of the allegations CEC seeks to strike as time-barred are relevant to the claims, we will not undergo that analysis. *See Tate v. Main Line Hosps., Inc.*, No. 03-6081, 2005 WL 300068, at *13-14 (E.D. Pa. Feb. 8, 2005)  (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d. 106 92002)).  " '[T]he entire time period of the hostile work environment may be considered by a court for the purposes of determining liability' as long as 'an act contributing to the claim occurs within the filing period.'" *Id.* (quoting *Morgan*, 536 U.S. at 117) (finding this analysis also applied to PHRA claim).

CEC then moves to strike paragraphs 10, 18-68 and 73-88.  (ECF Doc. No. 6, Def.'s Mem., 16.)  Officer Kwaning's counsel filed numerous complaints in this district and in state court asserting many of the same factual allegations.  In each subsequent case, the complaint

---

[4]    CEC similarly sought to strike certain paragraphs from claims brought against it by plaintiffs in *Black v. Community Education Centers, Inc.,* No. 13-6102, 2014 WL 859313 (E.D. Pa. Mar. 4, 2014) (DuBois, J.); *Siler v. Community Education Centers, Inc.*, No. 14-5019, 2014 WL 4931291 (E.D. Pa. Oct. 2, 2014) (Robreno, J.); and *Blocker v. Community Education Centers, Inc.*, No. 13-5127, 2014 WL 1348959 (E.D. Pa. Apr. 7, 2014) (Pratter, J.).  CEC also sought to strike similar allegations in cases before this Court: *McWilliams v. Community Education Centers, Inc.*, No 14-4783 and *Simmons v. Community Education Centers, Inc.*, No. 15-1029.

[5]    Rule 12(f) permits a party to move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f)(2). "Motions to strike are decided on the pleadings alone, and should not be granted unless the relevant insufficiency is 'clearly apparent.' " *Hanover Ins. Co. v. Ryan*, 619 F.Supp.2d 127, 132–33 (E.D.Pa.2007) (quoting *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir.1986)).

11

includes new or revised allegations taken from counsel's checklist that many times have no relation to the Plaintiff's alleged harm. Thus, we, as other esteemed members of this Court have, find that striking many of these factual allegations is necessary to "streamline [the] litigation." *Natale v. Winthrop Resources Corp.*, C.A. No. 07-4686, 2008 WL 2758238, *14 (E.D. Pa. July 9, 2008) (quoting *McInerney v. Moyer Lumber and Hardware, Inc.,* 244 F.Supp.2d 393, 402 (E.D. Pa. 2002)).

Accordingly, we strike paragraphs 18-20, 28, 31-33, 36-37, 48-51, 55-56, 60, 73-76, 78-88 of the Complaint. The allegations do not to relate to Officer Kwaning in any way or the disparate application of the disciplinary policy. In many instances, the allegations only pertain to the treatment of inmates housed at the Prison.

## IV.   CONCLUSION

At this preliminary stage, Officer Kwaning alleges a kernel of sufficient facts to state a plausible claim for race discrimination and hostile work environment. However, he fails to state a claim for retaliation due to his inability to plead any protected activity. In the accompanying Order, Officer Kwaning is granted leave to amend his complaint to try to cure the deficiency. Finally, we strike irrelevant or impertinent paragraphs replete here, and in the several complaints filed by Plaintiff's counsel for other corrections officers.